(1 App. Div. 192.)

### WEED v. WHITEHEAD et al.

(Supreme Court, Appellate Division, Second Department. February 4, 1896.)

1. REFORMATION OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action where the question was whether certain assignors of a $2,000 mortgage were entitled to have reformed the written assignment, which contained a guaranty of any deficiency not exceeding $2,100, on the ground that it was inserted through the fraud or mistake of the assignee's attorney, it appeared that the terms of the guaranty were arranged between the assignee's attorney and one of the assignors and their attorney; that the assignors' attorney was to draw the assignment and covenant for deficiency, and record it, and that the assignee's attorney, for certain reasons, was not to see it until after it was recorded; and that, after the form of guaranty was agreed on, the latter paid the amount of the mortgage to the assignors' attorney, who, after he went to another city, drew such assignment. The assignee's attorney swore that the covenant was in the exact form agreed on. *Held*, that the evidence did not justify the reformation of such covenant.

2. VACATING JUDGMENT.

On motion by assignors of a mortgage to vacate a judgment against them on a written guaranty of deficiency, it appeared that the judgment plaintiff parted with her money in reliance on the covenant of guaranty, and refrained from bidding at the sale in further reliance thereon; that the property had been sold, and a third person become its owner; and that such covenant was fully set out in the complaint, which alleged that such assignors were liable for any deficiency that might arise on the sale of the mortgaged premises up to a specified amount, and demanded judgment against them for such amount. *Held* that, though the assignment did not express the agreement as it was understood by such assignors, they were not entitled to have the judgment vacated and to be permitted to serve an answer.

Appeal from special term.

Action by Mary A. Weed against Emily Whitehead and others to foreclose a mortgage for $2,000 made by one Osborne to defendants

Richard H. Mullineaux and Alonzo Guest, and by them assigned to plaintiff, in which a judgment was rendered against defendants Mullineaux and Guest for $439.19 deficiency after sale of the mortgaged property. From an order vacating such judgment, and granting leave to defendants Mullineaux and Guest to serve an answer in the action, and interpose as a defense that the guaranty in the assignment does not express the true agreement between the parties, and to ask to have the same reformed, plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, and HATCH, JJ.

James E. Chandler, for appellant.
Charles T. Terry, for respondents.

BROWN, P. J.    This action was brought to foreclose a mortgage upon real estate made by one Osborne to the respondents Richard H. Mullineaux and Alonzo Guest, and by said Mullineaux and Guest assigned to the plaintiff. The assignment contained the following covenant:

"It is further covenanted and agreed, as part of this assignment, that the parties of the first part, their legal representatives and assigns, will pay to the said party of the second part, her legal representatives and assigns, any deficiency which may arise on a foreclosure sale of said mortgage: provided, however, such deficiency shall not exceed the principal sum of said mortgage and one hundred dollars in addition; and provided, further, that such foreclosure proceedings shall be begun within sixty days after said mortgage may become due and payable by any of the covenants therein or by its terms."

The respondents were made defendants in the action, and part of the prayer for judgment was that they should be adjudged to pay any deficiency arising upon the sale of the mortgaged premises not exceeding $2,100. The respondents appeared in the action by attorneys, but did not answer the complaint, and, the property having been sold, a judgment for $439.19 deficiency was duly entered against the respondents, on July 13, 1895. This judgment was thereafter assigned by the plaintiff to William I. Ticknor, he paying the full amount therefor. The order appealed from has vacated said judgment, and granted leave to the respondents to serve an answer in the action, and interpose, as a defense, that the covenant of guaranty in the assignment does not express the true agreement between the parties, and to ask to have the same reformed. It is the contention of the respondents that the true agreement was that they should pay the difference between $2,100 and the proceeds of the sale of the mortgaged property. We are of the opinion that the order should be reversed, and the motion denied.

It appears from the affidavits that the respondents solicited the plaintiff to take an assignment of the mortgage. This the plaintiff agreed to do, provided a guaranty thereof was given by the respondents. The terms of the guaranty were a subject of negotiation between the attorneys for the parties, and were finally agreed upon at a meeting held at the office of the respondents' attorneys at New Rochelle, at which there were present Mr. Guest, Mr. James E. Chandler, representing the plaintiff, and Mr. J. Addison Young, rep-

resenting the respondents. The affidavits of Mr. Young and Mr. Guest differ as to the form of the agreement made at that meeting. Mr. Young swears that respondents agreed "to pay the difference between the principal sum of said mortgage and one hundred dollars in addition thereto and the proceeds of the sale of said mortgaged property upon a foreclosure." Mr. Guest swears that they agreed "to guaranty the principal of said bond and mortgage and one hundred dollars in addition." Probably the legal effect of the contract, whichever way it is stated, is the same. But some facts appear in the affidavit of Mr. Chandler which are not denied, and which are most material in determining the question before us. He admits that the terms of the guaranty were agreed upon at Mr. Young's office, as stated in the affidavits of Messrs. Young and Guest, but he states that it was agreed that Mr. Young should prepare the assignment, and insert therein the covenant regarding the deficiency, which had been agreed upon, and that after the assignment was executed Mr. Young was to cause it to be recorded in the register's office at White Plains, and that he (Mr. Chandler) was not to see the assignment until after it was recorded. This course was taken for the reason that, at the time of the meeting aforesaid, the bond and mortgage were held by the Bank of New Rochelle, and it was necessary that they should be reassigned by said bank to the respondents, before the assignment could be executed to the plaintiff. He further swears that, after the form of the guaranty had been agreed upon, he paid to Mr. Young the amount of the mortgage, and that the deed of assignment to the plaintiff was subsequently drawn by Mr. Young after he (Mr. Chandler) had returned to New York, and that the covenant of guaranty contained therein is in Mr. Young's handwriting. In the face of these undisputed facts, the charge in the moving papers that the covenant, as it appears in the assignment, was inserted therein through fraud or mistake on the part of Mr. Chandler, is wholly without support. It appears, without contradiction, that it was written into the assignment by Mr. Young, the respondents' attorney, and while he may have been mistaken as to the purport of the agreement, if there was any mistake in the form in which it was inserted in the written paper it was his mistake alone. Mr. Chandler swears positively that the covenant was agreed upon in the precise form in which it appears in the assignment. He is corroborated by the instrument itself, and this corroborative evidence has great force from the fact that the writing was the act of Mr. Young. It is difficult for us to believe that Mr. Young or Mr. Guest could have understood the agreement to have been what they now claim it was, and yet, immediately after it was agreed upon, could have made so serious a mistake in the preparation and execution of the written instrument. The deliberate character of that act, performed entirely apart from and without interference from the other party to the agreement, and when the transaction was fresh in their minds, is the strong evidence that Mr. Chandler's version of the transaction is the correct one. The authorities all require that parol evidence of a mistake in a written contract must be most clear and convincing; the language of some of the cases is, "the

strongest possible." Courts of equity do not grant the remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty, of error. 2 Pom. Eq. Jur. (1st Ed.) § 859; 1 Story, Eq. Jur. § 157; Southard v. Curley, 134 N. Y. 148, 31 N. E. 330, and cases cited in the opinion. The utmost that can be determined from the testimony before us is that the matter is left in doubt. But a court of equity would not be justified, upon such evidence, in granting the relief which the respondents seek.

But, assuming that the assignment did not express the agreement as it was understood by the respondents, there is no proof in the moving papers of a fraud or of a mutual mistake. The plaintiff parted with her money in reliance upon the covenant of guaranty, and refrained from bidding at the sale, in further reliance thereon. The property has been sold, and a third party has become the owner thereof. The sale cannot be set aside, and it is impossible for the parties to be restored to their original positions. This condition of affairs is solely the result of the respondents' neglect. There has been no concealment, on the part of the plaintiff, of her claim. The covenant is set out in full in the complaint, and it is there alleged that the respondents are liable for any deficiency that may arise on the sale of the mortgaged premises up to the amount of $2,100, and judgment is demanded against them for that amount. The respondents have not been misled, but they have been negligent, and, as a result of their neglect, it is now beyond the power of the plaintiff to protect herself by bidding upon or purchasing the mortgaged property. The right to so protect herself is a very substantial one. It cannot be restored to her, and the order appealed from does not afford any substitute for it.

For these reasons, the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.